1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

ROBIN MONIZ,

        Plaintiff,

    v.

CITY OF DELANO, CALIFORNIA,

        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 1:13-cv-00093 - JLT

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

(Doc. 24)

The City of Delano seeks summary judgment, or in the alternative summary adjudication, on the claims brought by Plaintiff Robin Moniz. (Doc. 24.) Plaintiff filed her opposition to the motion on June 20, 2014 (Doc. 25), to which the City of Delano filed a reply on June 23, 2014 (Doc. 27.)

Because there are genuine issues of material facts related to whether Plaintiff suffered an adverse employment action, Defendant's motion for summary judgment is **DENIED.**

## I.    Procedural History

Plaintiff initiated this action by filing a complaint against the City of Delano ("the City") on January 18, 2013. (Doc. 4.) Plaintiff asserted that she was subjected to sexual harassment while employed by the City. (*See id.* at 2-3, ¶¶ 8-9.) Plaintiff alleged she was reassigned to the position of "Emergency Services Specialist" after complaining about the harassment. (*Id.*, ¶¶ 3, 9.) She was injured on the job while working in her new position, and alleged she "was forced to take time off work due to her personal injuries and emotional distress." (*Id.* at 3, ¶ 12.)

1

Plaintiff asserted her complaint about harassment was "a motivating factor" in the reassignment to her new position.  (*Id.*, ¶ 10.)  Further, Plaintiff asserted that she gave testimony in another case in which the plaintiff sued the City, *Elizabeth Sutton v. City of Delano*, Case No. 1:11-cv-01426-LJO-JLT. (*Id.* at 5, ¶ 29.)  Plaintiff alleged her deposition testimony and declaration in *Sutton* "were protected by state law" and were "motivating factor[s] in the termination of her employment on November 27, 2012. (*Id.*, ¶¶ 29, 31.)  Therefore, Plaintiff stated the following claims against the City: retaliation in violation of Title VII, California's Fair Employment and Housing Act ("FEHA"), and the Family and Medical Leave Act; and disability discrimination in violation of FEHA.  (*Id.* at 4-7.) The City filed its answer to the complaint on March 6, 2013.  (Doc. 8.)

The City filed its motion for summary judgment now pending before the Court on May 19, 2014.  (Doc. 24.)  In her opposition to the motion, Plaintiff asserted that she was "abandoning her claims other than her 1st and 2nd claims for relief."  (Doc. 25 at 2.)  Accordingly, the Court dismissed Plaintiff's Third, Fourth, and Fifth Claims for relief on June 27, 2014.  (Doc. 29.)

Because Plaintiff's remaining claims for retaliation in violation of Title VII and FEHA related to her job assignment that occurred in May 2010, the Court ordered supplemental briefing regarding whether Plaintiff exhausted her administrative remedies, and whether the Court has subject matter jurisdiction over the Title VII claim.  (Doc. 29.)  Plaintiff and Defendant agree the administrative remedies were exhausted in a timely manner.  (Docs. 30, 31.)  Accordingly, the claims remaining before the Court are: (1) retaliation in violation of Title VII and (2) retaliation in violation of FEHA. (*See* Doc. 4 at 4.)

## II.    Legal Standards for Summary Judgment

The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  *Matsuhita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).  Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In addition, Rule 56 allows a court to grant summary adjudication, or partial summary judgment, when there is no genuine issue of material fact as to a particular claim or portion of that claim.  Fed. R. Civ. P. 56(a); *see also Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir.

1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . .") (internal quotation marks and citation omitted).  The standards that apply on a motion for summary judgment and a motion for summary adjudication are the same.  *See* Fed. R. Civ. P. 56 (a), (c); *Mora v. Chem-Tronics*, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).

Summary judgment, or summary adjudication, should be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the "initial responsibility" of demonstrating the absence of a genuine issue of material fact.  *Celotex,* 477 U.S. at 323.  An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1422, 1436 (9th Cir. 1987).  A party demonstrates summary adjudication is appropriate by "informing the district court of the basis of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact."  *Celotex*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)).

If the moving party meets its initial burden, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue of a material fact.  Fed R. Civ. P. 56(e); *Matsuhita*, 475 U.S. at 586.  An opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 587.  The party is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that a factual dispute exits.  *Id.* at 586 n.11; Fed. R. Civ. P. 56(c).  Further, the opposing party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987).  However, "failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

1    The Court must apply standards consistent with Rule 56 to determine whether the moving party

2    demonstrated there is no genuine issue of material fact and judgment is appropriate as a matter of law.

3    *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993).  In resolving a motion for summary

4    judgment, the Court can only consider admissible evidence.  *Orr v. Bank of America, NT & SA*, 285

5    F.3d 764, 773 (9th Cir. 2002) (citing Fed. R. Civ. P. 56(e); *Beyene v. Coleman Sec. Servs., Inc.*, 854

6    F.2d 1179, 1181 (9th Cir. 1988)).  Further, evidence must be viewed "in the light most favorable to the

7    nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party. *Orr*,

8    285 F.3d at 772; *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

9    **III.    Evidentiary Objections**

10    Defendants make numerous objections to Plaintiff's evidence.  However, except for one

11   paragraph of the declaration of Mr. Fowler, it does not appear that any of the evidentiary objections

12   relate to facts which are in dispute.  In any event, the Court rules as follows:

13    **A.    Exhibit 5 – Photos of boxes**

14    Defendant objects that the photo lacks foundation and is not properly authenticated.  Plaintiff's

15   declaration indicates that the photo shows the boxes she was moving on the day she was injured.  (Doc.

16   25-1 at 4, 5) Thus, this is sufficient foundation for purposes of this motion so the objection is

17   **OVERRULED**.

18    **B.    Exhibit 6 – Photo of "seatrains"**

19    Defendant objects that the photo lacks foundation and is not properly authenticated.  Plaintiff's

20   declarations indicates that the photo of the "seatrains" show those which Plaintiff was required by

21   Chief DeRosia to empty.  (Doc. 25-1 at 4.)  This is sufficient for purposes of this motion, so the

22   objection is **OVERRULED**.

23    **C.    Moniz Declaration**

24        **1.    Page 3, paragraph 4, lines 3-12; Page 3, paragraph 4, lines 11-12; Page 3,**

25            **paragraph 4, line 16; Page 4, paragraph 6, lines 13-15; and Page 4,**

26            **paragraph 6, lines 15-16.**

27    Defendant objects that the declaration contradicts Plaintiff's earlier discovery responses.

28   However, Defendant fails to explain in what regard the declaration is inconsistent.  Though the

declaration is less specific as to the dates that events occurred and does not detail all of the events, the declaration does not appear to the Court to be inconsistent with the discovery response.  In addition, the Court cannot speculate as to the exact meaning of Defendant's objection.  Thus, the objections are **OVERRULED.**

> ### 2.      Page 4, paragraph 6, lines 24-26 and Page 4, paragraph 5, lines 6-8

Defendant objects that these references detailing what she was told was in the boxes, contradicts her deposition testimony.  The references to the deposition transcript indicate that at the time of the discussion with Chief DeRosia, he did not know what was in the boxes.  However, the declaration indicates that Plaintiff had several conversations with Chief DeRosia about the moving boxes so it is unclear whether Chief DeRosia told Plaintiff what was in the boxes at a different time than that discussed in her deposition.  Thus, the objection is **OVERRULED**.[1]

> ### 3.      Page 3, paragraph 4, lines 3-12; Page 3, paragraph 4, lines 11-12; Page 3, paragraph 4, lines 12-13; Page 4, paragraph 5, lines 6-8; Page 4, paragraph 6, lines 13-15; Page 4, paragraph 6, lines 15-16

Defendant objects that the cited lines contain hearsay.  As to the first cited portion, Defendant fails to direct the Court to the specific statements to which it objects but the Court surmises it is the statement that "Chief DeRosia merely told me he would take care of the problem . . ."  In any event, statements offered against a party that were made by the party's agent or employee on a topic that is within the scope of the employment relationship, are excluded from the hearsay rule.  F.R.E. 801(d)(2)(D).  Thus, the objections are **OVERRULED**.

> ### 4.      Page 3, paragraph 4, line 16

Defendant objects to Plaintiff's account of the statement she made to someone else about Eddie Aguil's sexual harassing comments.  It appears that this portion of the declaration is offered to demonstrate that she complained about Aguil and is not offered for the truth of them matter stated. Thus, the objection is **OVERRULED**.

///

---

[1]  Moreover, the Court is unconvinced that whether Plaintiff knew what was in the boxes is a material fact for purposes of this motion.

**5.      Page 3, paragraph 5, lines 24-25**

Defendant objects that the statement, that the building did not have drinking water, lacks foundation and contradicts Plaintiff's deposition testimony. However, Plaintiff's declaration establishes that she worked in the building and, therefore, has a basis for knowledge as to whether the building provided drinking water.  On the other hand, the Court notes that at her deposition, Plaintiff testified that there was a sink in the bathroom from which water could be obtained but it was not "drinking" water given the bathroom sink was "very nasty and dirty in that bathroom [and] I was not going to drink water out of that sink."  The deposition transcript demonstrates Plaintiff differentiated from drinking water—which could be obtained from a drinking fountain—and other, non-potable water which could be obtained from the bathroom sink.  Though, clearly, the declaration is more vaguely worded than the statements made at the deposition it is not inconsistent. Thus, the objection is **OVERRULED**.

**6.      Page 4, paragraph 5, lines 6-8**

The Court agrees this statement is hearsay and it has not been directed to any pertinent exception.  Thus, the objection is **SUSTAINED**

**7.      Page 4, paragraph 6, lines 13-15**

Based upon F.R.E. 801(d)(2)(D), the Court **OVERRULES** the objection to the statements attributed to Chief DeRosia.

**8.      Page 5, paragraph 7, lines 7-8**

Defendant objects that the statement is vague, irrelevant and lacks foundation.  The Court agrees that the sentence is poorly structured but it is apparent Plaintiff is asserting that the person who held the ESS officer position before her had an office within the Evidence Room of the Police Department.  Moreover, the Court does not agree that the location of the office of the prior ESS officer is irrelevant because it tends to show that the office to which Plaintiff was assigned was inferior which may be evidence of an adverse employment action.  On the other hand, the declaration fails to detail how Plaintiff knows about the location of the office for the prior ESS officer.  Her statement that she is "familiar" with the location of the office is a mere conclusion without factual support. Thus, the statement lacks foundation and this objection is **SUSTAINED**.

1        D.      **Fowler Declaration**

2               1.      **General objection**

3        Federal Rules of Civil Procedure 26(e) requires a party who has responded to an interrogatory

4    to supplement its response in a timely manner if the party learns that its response is incomplete and if

5    the additional information has not otherwise been made known to the other party during the discovery

6    process.  Federal Rules of Civil Procedure 37(c) (1) prohibits a party who fails to provide information

7    or identify a witness as required by Rule 26(e), from using that information or witness to supply

8    evidence on a motion or at trial unless the failure was substantially justified or harmless. To determine

9    whether evidence should be precluded under Rule 37, "courts consider (1) the surprise to the party

10   against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the

11   extent to which allowing the evidence would disrupt trial; (4) the importance of the evidence; and (5)

12   the nondisclosing party's explanation for it[s] failure to disclose the evidence." *San Francisco*

13   *Baykeeper v. West Bay Sanitary Dist.*, 791 F.Supp.2d 719, 733 (N.D. Cal. 2011).

14              Defendant objects to the declaration of Mr. Fowler because at the time Plaintiff made her initial

15   disclosure, though she listed Fowler as a witness and indicated that he "worked for the City of Delano

16   and is familiar with issues experienced by Plaintiff while working for the City," she did not provide his

17   current contact information. (Doc. 27-1 at 8.)  At her deposition on January 31, 2014, Plaintiff testified

18   she had not spoken to Fowler in "at least two years, three years." *Id.* at 9.  She reported that she

19   believed he worked at the Chamber of Commerce in Delano but knew of no other information about

20   where he could be contacted. *Id.* Nevertheless, two weeks later, Plaintiff supplemented her disclosure

21   to provide contact information for Fowler and Elizabeth Sutton. *Id.*  Defendant notes the supplemental

22   disclosure contained a printed date of May 30, 2013 and, therefore, argues Plaintiff knew the contact

23   information of Mr. Fowler for nine months before supplementing her disclosure.  (Doc. 27-1 at 10.)

24   Notably, this is the exact same date that Plaintiff made her initial disclosures.  After review of the

25   supplemental disclosure, it seems apparent that counsel "re-used" the initial disclosure to make the

26   supplemental disclosure and, in doing so, failed to change the date.  This is consistent with Plaintiff's

27   testimony at her deposition that she did not have contact information for Mr. Fowler at that time but

28   believed he worked for the Chamber of Commerce in Delano.

On the other hand, the Court finds that that the lack of an earlier formal disclosure was harmless because Defendant did not suffer surprise. Fed. R. Civ. P. 37(c)(1). Clearly, Defendant was apprised of Mr. Fowler and his connection to this case from the onset. Despite this, Defendant complains about the content of the declaration in which Mr. Fowler indicates that he served in the ESS position after Plaintiff left and has direct evidence of the retaliation Plaintiff suffered. (Doc. 27-1 at 8.) Seemingly, in making this argument, Defendant asserts that it had no idea of these facts before the disclosure. However, this position is contrary to the evidence.

First, at her deposition, Plaintiff provided testimony about Fowler witnessing her making complaints about the sexual harassment she was suffering on at least five occasions. Moniz Depo. at 12:17-25; 13:9-15; 16:1-7. She testified Fowler heard Chief DeRosia make inappropriate and harassing comments to her. *Id.* at p. 77:15-79:3. She testified that Fowler took her crime prevention officer position when she left it. *Id.* at 138:10-16. Thus, in addition to Plaintiff's initial disclosure—which confirmed Fowler would be a witness for Plaintiff—Defendant had reason to know that Fowler had information upon which Plaintiff would rely and received this information during the discovery period.

Second, Fowler was an employee of Defendant and remained so for about two years after Plaintiff went out on medical leave. The suggestion that Defendant was unaware of this person, was unaware he was given Plaintiff's job after she left and did not have last known contact information for him, seems unlikely.[2] It is uniquely within the knowledge of the Defendant as to who took on the duties of Plaintiff once she left.

Finally, at Plaintiff's deposition, Defendant failed to ask Plaintiff any questions about what she believed Fowler's knowledge was of the subject of this litigation. Defendant offers no explanation for this failure or its decision not to seek out Fowler at his job once his employment location was disclosed at Plaintiff's deposition. Given this, the Court does not find Plaintiff was surprised by this witness. Thus, the objection is **OVERRULED**.

### 2.      Page 1, paragraph 2, lines 21-23

Defendant objects that the statements are hearsay, vague and conclusory and they lack

---

[2] Given the obligation to provide tax forms at the end of the year, at a minimum, Defendant had to have some basic contact information in its possession.

8

foundation.  The statement at issue repeats what Fowler says Plaintiff told him about what DeRosia told her, and contains multiple levels of hearsay.  Though the Court finds an exception as to DeRosia's statement, there is not one for Fowler repeating Plaintiff's statements, if it is offered for the truth. Thus, the hearsay objection is **SUSTAINED**.  However, the other objections are **OVERRULED**.

### 3.    Page 1, paragraph 2, lines 23-24

Defendant objects that the statement is speculative and lacks foundation.  However, the statement reflects Fowler's own observation and, therefore, the objections are **OVERRULED.**

### 4.    Page 1, paragraph 2, lines 26-27

Defendant complains that the statement fails to outline Fowler's basis for knowledge. Fowler declares only that he was "aware" of Plaintiff's reassignment to the ESS position.  However, this is a conclusion rather than setting forth factual support for his knowledge.  For example, he does not say how he knew this such as he saw her perform these other duties, that there was formal announcement of this change or there was some other event that occurred which informed him of her change in assignment. Thus, the objection is **SUSTAINED**.

### 5.    Page 2, paragraph 3, lines 2-3

Defendant complains the statement lacks foundation, it is vague and sets forth a legal conclusion.  The Court agrees.  Whether an action is retaliatory is a legal conclusion that Fowler is not permitted to offer. Thus, this objection is **SUSTAINED** though the remaining objections are **OVERRULED**.

### 6.    Page 2, paragraph 4, lines 4-6

Plaintiff contends that the sentence related to Fowler being assigned to Plaintiff's "job" lacks foundation because she performed "ESS *duties*, not the position.  Mr. Fowler has not shown he has personal knowledge of what ESS duties Plaintiff was performing."  (Doc. 27-1 at 11.)  Notably, this assertion contradicts Plaintiff's declaration that she was offered the job of ESS officer and accepted it. (Doc. 25-1 at 3.)  In any event, the declaration makes clear that Fowler was aware of Plaintiff's specific job duty at issue which required her to perform manual labor such as moving boxes and equipment. (Doc. 25-2 at 3.)  Thus, the objection is **OVERRULED**.

///

**7.      Page 2, paragraph 4, lines 7-9**

Given Fowler worked at the Police Department, as he declares, he has a basis for stating where the previous ESS officer's office was located.  Thus, the objection is **OVERRULED**.

**8.      Page 2, paragraph 5, lines 10-12**

The statement of Fowler about what he observed the relationship to be between DeRosia and Aguil is within his personal knowledge as is his recollection that DeRosia referred to Aguil by a nickname.  The objection is **OVERRULED**.

**9.      Page 2, paragraph 6, lines 14-15**

The statement of Fowler about what he observed to be the outward manifestation of DeRosia's emotional state is within his personal knowledge.  The objection is **OVERRULED**.

**10.     Page 2, paragraph 6, lines 15-17**

The objections are **OVERRULED**.  The declaration sets forth statements by employees of Defendant on topics within the scope of their employment.  F.R.E. 801(d)(2)(D).  The statement adequately describes the time period in which DeRosia and Aguil made the statements and the complaints that Plaintiff made, in light of the fact that there is no indication that the subject matter of the complaints changed.

**11.     Page 2, paragraph 6, lines 17-19**

The objections are **OVERRULED**.  The declaration sets forth statements by an employee of Defendant on a topic within his scope of employment.  F.R.E. 801(d)(2)(D).  Moreover, the statement sufficiently sets forth why Fowler concluded as he did.

**12.     Page 2, paragraph 6, lines 20-23**

The objections are **OVERRULED**.  The declaration sets forth statements by employees of Defendant on topics within the scope of their employment.  F.R.E. 801(d)(2)(D).

**E.      Sutton Declaration**

**1.      General objection**

Defendant objects that Sutton's declaration should not be considered for the same reasons as its objections to Fowler's declaration.  For the same reasons, the Court **OVERRULES** the objections.

Here, there is an even greater argument that Defendant did not suffer surprise.  Sutton had sued

10

Defendant previously and Plaintiff testified in that matter.  Indeed, Sutton's declaration was filed on this Court's docket—as demonstrated by the heading on the declaration—on August 14, 2012.  (Doc. 25-3.)  Thus, the suggestion that Defendant was not aware of this witness or the content of her testimony is unfounded.

Moreover, her declaration is not irrelevant as it has a tendency to show that employment actions taken against Plaintiff were a pretext for retaliation.

In general, evidence of other acts or wrongs may be admitted to demonstrate motive.  F.R.E. 404(b).  Indeed, courts admit this type of evidence frequently, upon the proper showing.  For example, in *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1286 (11th Cir. 2008)—which was a case involving claims of racial discrimination and retaliation—the court held, "The 'me too' evidence was admissible, under Rule 404(b), to prove the intent of Bagby Elevator to discriminate and retaliate." Likewise, in *Heyne v. Carruso*, 69 F.3d 1475, 1481 (9th 1995), the Court reversed the trial court's decision to preclude this type of evidence.  The Court determined that evidence from other employees who suffered sexual harassment by the defendant was probative of the defendant's motive for firing her.  *Id*.  Thus, the objections are **OVERRULED**.

### 2.      Page 7, paragraph 20

For the reasons set forth above, evidence about how DeRosia and Aguil treated other employees is relevant as evidence of motive.  Likewise, their statements, as repeated by Sutton, are admissible as under F.R.E. 801(d)(2).  Finally, Sutton's personal observations of the actions of DeRosia and Augil do not lack foundation.  Thus, the objections are **OVERRULED**.

## IV.      Undisputed Material Facts[3]

Chief DeRosia hired Plaintiff, who began working for the on September 28, 2009.  (JSF 1; UMF 1.)  In December 2009, DeRosia moved Plaintiff into the office adjacent to his, which she shared with Eddie Aguil.  (JSF 2.)  Plaintiff complained to DeRosia about Eddie Aguil in April and May of 2010, and asked to be moved to a new office on May 18, 2010.  (UMF 2.)

---

[3] The parties prepared a Joint Statement of Undisputed Material Facts ("JSF"), which contains very few facts.  (Doc. 24-3.)  Plaintiff admits many of the facts in the City's Separate Statement (Doc. 25-10), which are identified as undisputed material facts ("UMF").  Thus, the Court cannot figure out why these undisputed facts do not appear on the joint statement.  The joint statement should reflect *all* facts about which the parties agree for purposes of the determination of the motion.

On May 19, 2010, DeRosia gave Plaintiff a memo for a "Special Assignment Opportunity," offering her an opportunity to assume duties of the City's vacant Emergency Services Special ("ESS") position.  (UMF 3; Doc. 24-4 at 142.)  Specifically, the memorandum from Chief DeRosia stated:

> I have a special assignment opportunity that I wanted to present to you to ascertain if you would be interested in the position.  The Emergency Services Special position is vacant, and there is still a need to have limited amounts of work completed in that area and I have nobody available to perform these tasks.

> If you would like to be assigned this ancillary duty, you would be authorized a 2.5% special assignment stipend. This additional assignment would be voluntary, and you are not being directed in any manner to assume these duties.

> Further, you would be allowed to set an office up within the EOC and work out of that area, however, you would be required to report at 0730 hrs each day to the PD and 1530 each to the PD, to check your office maintained here for any projects or other Items.

> If this is something that you would be interested in doing, please provide me with a memorandum that would indicate such a desire by Friday, May 21, 2010.  Further, should you desire to assume this ancillary role, I will be your immediate supervisor for emergency services related issues and CSO Aguil for crime prevention related issues.

(Doc. 24-4 at 142.) The ESS position had been vacant since 2009, and Plaintiff had been interested in it.  (UMF 4.)  In January 2010, Plaintiff "reviewed the job description to determine what she needed to do to become qualified for the position."  (UMF 5.)

The same day Plaintiff received the offer from DeRosia, she responded stating: "I am very pleased to accept the special assignment of Emergency Services Special position."  (UMF. 6; Doc. 24-4 at 144.)  Plaintiff informed DeRosia that she was "thankful for the opportunity" and she was "look[ing] forward to starting this new assignment on Monday May 24, 2010."  (Doc. 24-4 at 144.)  She "viewed the ESS duties as a 'promotion' and thought 'it was going to be a good deal.'"  (UMF 39; Moniz Depo. 91:25-92:23.)

Plaintiff did not speak to DeRosia about the specific ESS duties she would perform prior to accepting the offer.  (UMF 7.)  She "expected that her ESS duties would include setting up for emergency services, disaster preparedness, and getting the computers up and running."  (UMF 8, citing Moniz Depo. 101:15-102:3.)  In general, Plaintiff believed she would be "doing office type of work."  (Moniz Depo. 101:17-20.)  The ESS duties were not intended to replace Plaintiff's Crime Prevention Officer duties, but "were additional duties for which she received increased pay."  (UMF 9.)

12

1    Plaintiff visited the EOC "at least several times" prior to beginning to work there in June 2010.

2    (Moniz Depo. 91:25-92:23.)  However, she had never been in the EOC when it was hot.  (*Id.*) Plaintiff

3    did not know the building did not have drinking water aside from the water from the bathroom, and

4    because the sink was "very nasty and dirty" she did not want to drink that water.  (Moniz Depo.,

5    127:18- 128:9.)  Further, Plaintiff reported the cooling system was not working, and requested a fan

6    that was provided by DeRosia on June 28, 2010.  (UMF 45; Moniz Decl. at 4, ¶ 5.)  DeRosia reports the

7    fan was provided to Plaintiff "the very next day"after she requested it, and it came from his house.

8    (DeRosia Decl. ¶ 10.)  Plaintiff requested a second fan, which DeRosia told her could not be provided

9    due to budgetary constraints.  (Moniz Decl. at 4, ¶ 5.)

10    Chief DeRosia asked Plaintiff to take inventory of boxes in a storage room next to the EOC.

11    (UMF 48.)  Prior to assuming the ESS duties, Plaintiff "was not required to lift heavy objects," and had

12    "never performed any such manual labor."  (Moniz Decl. at 4, ¶ 5.)  On August 5, 2010, Plaintiff went

13    to the storage room, where she went through boxes, each weighing approximately 50 pounds, which

14    contained "personal protective equipment (PPE) to be used in an emergency, including gas masks,

15    Nomex suits, rubber boots, and other equipment that can be used during nuclear or chemical incidents."

16    (UMF 10; Moniz Decl. ¶ 6 .)  In addition, the boxes contained "material for vinyl shade tents, which

17    needed to be separated from the PPE and returned to storage."  (*Id.*)  To access the boxes over her head,

18    "Plaintiff would allow them to drop on her before dropping them to the ground."  (UMF 11.)  Two

19    boxes fell upon Plaintiff, "resulting in physical injury that rendered her incapable of working."  (*Id.*)

20    After Plaintiff left work that day, she did not return.  (JSF 3.)

21    **V.      Discussion and Analysis**

22         **A.      Title VII and FEHA**

23    Plaintiff alleges Defendant is liable for retaliation in violation of Title VII and FEHA.  (Doc. 4

24    at 4.)  Title VII makes it unlawful "for an employer to discriminate against any of his employees . . .

25    because he has opposed any practice made an unlawful employment practice by this [title] . . . or

26    because he has made a charge, testified, assisted, or participated in any manner in an investigation,

27    proceeding, or hearing under this [title]. . . ."  42 U.S.C. § 2000e-3(a).  Similarly, under FEHA, it is

28    unlawful "[f]or any employer, labor organization, employment agency, or person to discharge, expel,

13

or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." Cal. Gov't Code § 12940(h).

Claims for violations of Title VII and FEHA involve shifting burdens. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973); *Guz v. Bechtal Nat'l Inc.*, 24 Cal.4th 317, 354 (2000) ("Because of the similarity between state and federal employment discrimination laws, California courts look to pertinent federal precedent when applying our own statutes"). First, the plaintiff bears the burden to establish a prima facie case of retaliation. *Id.* at 802; *Hawn v. Executive Jet Mgmt., Inc.*, 615 F.3d 1151, 1155 (9th Cir. 2010). The evidence may be either direct or circumstantial, and the amount that must be produced to create a prima facie case is "very little." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

If a plaintiff establishes a prima facie case, "the burden of production, but not persuasion, then shifts to the [defendant] to articulate some legitimate, nondiscriminatory reason for the challenged action." *Hawn*, 615 F.3d at 1155; *see also McDonnell Douglas Corp*, 411 U.S. at 803. If the defendant carries this burden, the inquiry does not end. Rather, the burden shifts back to the plaintiff to demonstrate the reasons proffered by defendant are pretext for the violation of Title VII. *Id.*; *McDonnell Douglas Corp*, 411 U.S. at 805. Thus, the plaintiff has "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against [him]." *Reeves v. Sanderson Plumbing Products, Inc*. 530 U.S. 133, 142 (2000).

### 1.    Elements of a Retaliation Claim

An employer violates the anti-retaliation provisions if an "adverse employment action occurs because of the employee's opposition to conduct made unlawful." *Hashimoto v. Dalton*, 118 F.3d 671, 680 (9th Cir. 1997). To establish a prima facie case for retaliation, a plaintiff must demonstrate "(1) she engaged in an activity protected by Title VII; (2) her employer subjected her to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action." *Bleeker v. Vilsack*, 468 Fed. App'x 731, 732 (9th Cir. 2012); *see also Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005) (explaining that a claim for retaliation in violation of FEHA requires a plaintiff to establish: "(1) he or she engaged in a 'protected activity,' (2) the employer subjected the

14

1   employee to an adverse employment action, and (3) a causal link existed between the protected

2   activity and the employer's action").

3   **2.    Plaintiff's Prima Facie Case**

4   The City asserts that for purposes of this motion, the Court should assume that Plaintiff

5   engaged in a protected activity.  (Doc. 24-1 at 16, n.1)  However, the City argues Plaintiff is unable to

6   establish a prima facie case for retaliation in violation of FEHA and Title VII "because she did not

7   suffer an adverse employment action."  (*Id.* at 16.)

8   **a.    Adverse employment action**

9   "[A]n adverse employment action is one that materially affects the compensation, terms,

10   conditions, or privileges of employment."  *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir.

11   2008) (internal quotation marks and citation omitted).  The Ninth Circuit has determined "a wide array

12   of disadvantageous changes in the workplace constitute adverse employment actions."  *Ray*, 217 F.3d

13   at 1240.  Adverse employment actions may include a transfer of job duties, undeserved performance

14   ratings, and the dissemination of unfavorable job references.  *Id.* at 1241 (citing *Yartzoff*, 809 F.2d at

15   1376; *St. John v. Employment Development Dept.*, 642 F.2d 273, 274 (9th Cir. 1981); *Hashimoto v.*

16   *Dalton*, 118 F.3d 671, 676 (9th Cir. 1997)).  Even a lateral transfer may constitute an adverse

17   employment action.  *See Yartzoff*, 809 F.2d at 1376.  To determine "whether a particular action or

18   course of conduct rises to the level of actionable conduct, the court "should take into account the

19   unique circumstances of the affected employee as well as the workplace context of the claim."

20   *Yanowitz v. L'Oreal USA, Inc*., 36 Cal. 4th 1028, 1052 (2005).

21   Plaintiff contends that under both federal and state law, she suffered an adverse employment

22   action because her job duties were "more arduous."  (Doc. 25 at 4.)  Plaintiff observes that her job

23   duties as a crime services officer involved "no physical labor," and required her to make presentations

24   to schools and civic groups, attend meetings, and perform "some office work in the police department

25   indoors with air conditioning." (*Id.*)  Plaintiff contends: "It cannot seriously be argued that moving a

26   crime prevention officer who makes civic presentations to a manual labor job in a hot building alone

27   without water does not seriously materially affect the terms and conditions of Plaintiff's employment."

28   (*Id.*, citing *Horsord v. Board of Trustees*, 132 Cal.App.4th 359, 373 (2005)).

On the other hand, the City argues that Plaintiff was not reassigned the position of ESS, and notes that she "viewed the ESS duties as a 'promotion' and thought 'it was going to be a good deal.'" (Doc. 24-1 at 18, citing UMF 39.)  Further, the City notes that Plaintiff did not initially "feel like her duties were unfair or that the Chief was retaliating against her."  (*Id.*)  The City argues that to the extent Plaintiff's retaliation claim is based upon the Chief "suddenly making her working conditions difficult in August 2010, those allegations have been contrived after the fact and contradicted by the evidence."  (*Id.*)

Notably, it is unclear whether Plaintiff was reassigned to *only* the duties of an ESS officer, or whether she retained her prior duties.  In the memo offering the "Special Assignment," Chief DeRosia indicated the work would be an "ancillary duty" (Doc. 24-4 at 142), yet Plaintiff referred to the job as a "new assignment" and stated she was pleased to accept the "Emergency Services Special position." (UMF 6; Doc. 24-4 at 144.)  Regardless, it is undisputed that when Plaintiff responded to the offer, she thought she would be performing "office type of work." (UMF 7; Moniz Depo. 101:17-20.)  However, Plaintiff was told "to inventory all the equipment at the EOC building and in surrounding seatrains," which required her to move the boxes full of equipment, weighing about 50 pounds. Moreover, Plaintiff was required to move these boxes after requesting assistance to help her and this assistance being denied.  (Doc. 25-1 at 4)

The reassignment to ESS duties affected the terms of Plaintiff's employment by requiring her to take inventory of equipment and perform manual labor, which she had never done as a Crime Prevention Officer.  Thus, Plaintiff has carried the burden to show that she suffered an adverse employment action under both FEHA and Title VII.  *See Horsford*, 132 Cal.App.4th at 374 (finding an officer's transfer to position in which he had no prior experience was an adverse action, despite the fact that the assignment "may have been consistent with the terms and conditions of [his] employment").

### b.      Causation

The requisite causal link between protected activity and an adverse employment action may be "inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." *Yartzoff v. Thomas,* 809 F.2d 1371, 1375 (9th Cir. 1987).  Notably, "causation

16

can be inferred from timing alone where an adverse employment action follows on the heels of protected activity." *Villiarimo v. Aloha Island Air*, 281 F.3d 1054, 1065 (9th Cir. 2002).

Here, Chief DeRosia's memo regarding the reassignment to ESS duties was given to Plaintiff only one day after Plaintiff made a complaint to DeRosia regarding the conduct of Eddie Aguil. (UMF 2-3.)  Indeed, Plaintiff testified that when the job was offered, DeRosia indicated that taking the job would solve the problem she was having with Eddie.  (Doc. 24-4 at 50)  Moreover, notably, at the time the offer was made, DeRosia did not outline what specific duties Plaintiff was going to be required to take on and, in particular, did not tell Plaintiff that she would be required to do manual labor during the excessively hot summer months.  One interpretation most favorable to Plaintiff is that the job offer was purposefully vague and inexact so that burdensome and punishing duties could be assigned once she agreed to take on the tasks.  Because the Court is obligated to interpret the evidence most favorably to the non-moving party, the Court conclude that a causal link may be inferred.  *See, e.g., Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) (inferring causation where adverse employment actions took place less than three months after the plaintiff's complaint where his supervisors were aware of his Title VII charges and his participation in administrative investigations); *Strother v. S. Cal. Permanente Med. Grp.*, 79 F.3d 859, 869-70 (9th Cir. 1996) (finding causal link where alleged retaliation followed within months of protected activity where supervisor knew of the employee's complaint).

### 3.      Legitimate Reason

Because Plaintiff has established a prima facie case for retaliation, the burden of production shifts to the City "to articulate some legitimate, nondiscriminatory reason for the challenged action." *Hawn*, 615 F.3d at 1155.  Under FEHA, a defendant must identify "reasons that are facially unrelated to prohibited bias," but the articulated reasons "need not necessarily have been wise or correct."  *Guz*, 24 Cal.4th at 358.

Here, Defendant asserts that "[t]he City's reason is that Plaintiff voluntarily accepted the ESS duties."  (Doc. 24-1 at 19.)  However, this is insufficient.  Based upon the evidence presented, Plaintiff was unaware what the ESS duties were, and the assignment to conduct the inventory came *after* she

accepted the position. Consequently, the City has not carried its burden to identify a legitimate business reason for the assignment.

### 4.    Pretext

Even assuming the City met its burden to articulate a legitimate, nondiscriminatory reason for the reassignment, Plaintiff carries her burden "raise a triable issue of material fact as to whether the defendant's proffered reasons . . . are mere pretext." *See Hawn*, 615 F.3d at 1155-56.

 "A plaintiff can show pretext directly, by showing that discrimination [or retaliation] more likely motivated the employer, or indirectly, by showing that the employer's explanation is unworthy of credence." *Vasquez*, 349 F.3d at 641; *see also Coghlan v. Am. Seafoods Co.*, 413 F.3d 1090, 1094-95 (9th Cir. 2005). Direct evidence typically consists of retaliatory statements or actions by the employer. *Coghlan*, 413 F.3d at 1095. Indirect evidence "requires an additional inferential step" to establish retaliation. *Id.* Here, Plaintiff presents both direct and indirect evidence that of a retaliatory motive behind the assignment to more arduous duties.

Mike Fowler asserts that he shared an office with Eddie Aguil for two years, during which time "Chief DeRosia and Eddie Aguil both told [him] that Ms. Moniz had messed up by complaining about Eddie Aguil and they would find any way to keep her from returning to work for the City." (Fowler Decl. ¶4, 6.) Such statements are direct evidence of retaliatory intent. *See Vasquez*, 349 F.3d at 641; *see also Sischo-Nownejad,* 934 F.2d at 1111 (finding direct evidence of sex discrimination where the plaintiff was called "an old warhorse" and her students "little old ladies").

Further, Mr. Fowler reports that despite the fact that he took the ESS duties only the week after Plaintiff was injured, "he was never given an assignment to perform manual labor such as remov[ing] boxes from a closet or [to] remove equipment from seatrains at the EOC site." (Fowler Decl. ¶ 4.) This is particularly noteworthy because there is no showing the inventory was completed before Plaintiff was injured and no showing that the urgency to have the inventory completed—as showing by Chief DeRosia's statement on August 1, 2010 that Plaintiff must do the work despite the lack of assistance (Doc. 25-1 at 4)—had been alleviated.

Moreover, the office Mr. Fowler was assigned "was located in the City Police Department, not at the EOC building." (*Id.*) Similarly, the individual who performed the ESS duties prior to Plaintiff

18

1   was assigned an office "located within the Police Department building in the evidence room."  (*Id.*)

2   Because Plaintiff was treated in an inferior manner when compared to other officers with the ESS

3   duties, she has also presented indirect evidence of retaliatory intent.  *See Hawn* , 615 F.3d at 1156 (a

4   plaintiff may rely upon a comparison with other similarly situated to provide an inference of a

5   retaliatory motive).

6   **B.     Workers' Compensation and Plaintiff's Claims**

7       The City argues that workers' compensation is the exclusive remedy for Plaintiff's "physical

8   and emotional injuries she suffered as a result of the boxes falling on her at the EOC."  (Doc. 24-1 at

9   21.)  In California, when an employee suffers a physical injury arising out of the course of her

10  employment, the employee's "sole and exclusive" remedy for the injury is under the Workers'

11  Compensation Act.  Cal. Labor Code §§ 3600, 3602; *see also Cole v. Fair Oaks Prot. Dist.*, 43 Cal.3d

12  148, 160 (1987).  However, some employer misconduct is not covered by the exclusivity provisions of

13  the Workers' Compensation Act.  *Fermino v. Fedco, Inc.*, 7 Cal.4th 701, 708-15 (1994); *Cole*, 43

14  Cal.3d at 161.

15      California's Supreme Court observed that the exclusivity provision is not applicable where "the

16  employer or insurer stepped out of their proper roles."  *Cole*, 43 Cal.3d at 161.  The court explained,

17  "The purpose of the Act is to compensate for losses resulting from the risks to which the fact of

18  employment in the industry exposes the employee."  *Shoemaker v. Myers*, 52 Cal.3d 1, 16 (1990).  In

19  *Shoemaker*, the court explained there is a presumed "compensation bargain," under which "the

20  employer assumes liability for industrial personal injury or death without regard to fault in exchange

21  for limitations on the amount of that liability" and "[t]he employee is afforded relatively swift and

22  certain payment of benefits to cure or relieve the effects of industrial injury without having to prove

23  fault."  *Id.*, 52 Cal.3d at 16.  To determine whether a plaintiff's claims are subject to the exclusivity

24  provision, courts should inquire "whether the employer's conduct violated public policy and therefore

25  fell outside the compensation bargain."  *Fermino*, 7 Cal.4th at 715.

26      Notably, California courts have determined that FEHA claims are "clearly outside the

27  compensation bargain."  *Huffman*, 121 Cal.App.4th at 698, n. 11 (citing, e.g., *Accardi v. Superior*

28  *Court*, 17 Cal.App.4th 347) ("Discrimination in employment is *not* a normal incident of employment.

A claim for damages under the Fair Employment and Housing Act . . . is not preempted by the workers' compensation act.")  Because Plaintiff's claim for retaliation arises under FEHA, the exclusivity provision of the Workers' Compensation Act does not apply to her claim.

The City concedes the exclusivity provision is inapplicable to Plaintiff's claims for retaliation, but argues that "the physical injuries and emotional injuries" she suffered "are subject to the workers' compensation exclusivity."  (Doc. 24-1 at 21-22.)  The City asserts the facts now before the Court are similar to those presented *Huffman v. Interstate Brans Companies*, 121 Cal. App. 4th 679 (2004), where the court found an employee's injury was subject to the exclusive remedy provision, although his claim for age discrimination was not.  In *Huffman*, an employee was unlawfully demoted to a new position involving physical labor, and suffered a knee injury working in the new position.  *Huffman*, 121 Cal.App.4th at 689-90.  The employer argued "the pain and suffering . . . attributed to [the] post-demotion knee injury is not except from the exclusivity provisions."  *Id.* at 692.  Thus, the issue before the court was "whether, and to what extent, a work-related injury following a discriminatory employment action is also barred by the exclusivity provision."  *Id.* at 695 n.7.

The court determined that the "traditional tort 'substantial factor' test should be applied where an individual suffers an injury following a discriminatory action.  *Huffman*, 121 Cal.App.4th 696. Under this test, "to be exempt from the exclusive remedy provisions of the [Workers' Compensation Act] the unlawful act must be a substantial factor in the subsequent injury."  *Id.* at 698.  The court found the plaintiff's demotion was not a substantial factor in his injury, and as such the plaintiff's knee injury was subject to the exclusivity provision.  *Id.* The court explained that "[t]he injury Huffman sustained was because of the physical requirements of the job, which all division sales managers were required to perform, not because he was unlawfully replaced as a district manager by a younger man." *Id.* at 699.

In contrast, here, it appears that *only* Plaintiff was required to conduct inventory and move boxes while performing the ESS duties.  Mr. Fowler reports that he was never required to undertake these tasks, although he assumed the ESS position only a week after Plaintiff was injured.   (Fowler Decl. ¶ 4.)  Consequently, it does not appear that the injury was sustained because of the physical requirements of the job, but rather because of the retaliatory act of assigning arduous duties another

20

ESS officer was not required to perform.  Because the assignment of the duties was a substantial factor in causing the injuries, Plaintiff's injuries are not subject to the exclusivity provision of the Workers' Compensation Act.

Nevertheless, to the extent that Plaintiff is successful at trial, the damages she is awarded for lost pay should be offset by Workers' Compensation benefits.  *See McLean v. Runyon*, 222 F.3d 1150, 1155-57 (9th Cir. 2000)

**VI.**      **Conclusion and Order**

As set forth above, the proffered evidence is sufficient to raise genuine issues of fact as to whether Plaintiff suffered retaliation in violation of Title VII and FEHA.  Even assuming the City carried its burden to identify a legitimate business reason for the actions taken, Plaintiff has presented sufficient evidence of pretext for unlawful retaliation.

Accordingly, it is **HEREBY ORDERED** that Defendant's motion for summary judgment (Doc. 24) is **DENIED.**

IT IS SO ORDERED.

Dated:   __**August 5, 2014**__                     _____**/s/ Jennifer L. Thurston**_____
                                                    UNITED STATES MAGISTRATE JUDGE