1

2

3

4

5

6

7

8
### UNITED STATES DISTRICT COURT

9
### EASTERN DISTRICT OF CALIFORNIA

10

11  ROBIN MONIZ,                          )  Case No.: 1:13-cv-00093 - JLT
                                          )
12              Plaintiff,                )  ORDER ON MOTIONS IN LIMINE
                                          )
13       v.                               )  (Doc. 36)
                                          )
14  CITY OF DELANO, CALIFORNIA,           )
                                          )
15              Defendant.                )
                                          )
16  _____      )

17          Before the Court are the motions in limine filed by Defendant, City of Delano.  (Doc. 36)

18  because the arguments are adequately set forth in the moving and opposing papers, the hearing on the

19  motions in limine is **VACATED**.

20  **I.      Background**

21          In her complaint, Plaintiff alleges she was reassigned to the position of "Emergency Services

22  Specialist" after complaining about sexual harassment by her supervisor, Eddie Aguil.  (Doc. 4 at 2-3)

23  While working in her new position, she suffered an injury and claims she "was forced to take time off

24  work due to her personal injuries and emotional distress."  <u>Id.</u> at 3.

25          As issue in this trial are Plaintiff's claims of retaliation in violation of Title VII and California's

26  Fair Employment and Housing Act ("FEHA").  <u>Id.</u> at 4-7.  Plaintiff alleges her complaint of sexual

27  harassment was "a motivating factor" in the reassignment to her new position.  (Doc. 4 at 3)  Thus, she

28  claims her protected activity was her complaint of sexual harassment and the adverse employment

1

1   action was her reassignment to the ESS duties.  Id.

2   **II.    Legal Standards Governing Motions in Limine**

3         "Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the

4   practice has developed pursuant to the district court's inherent authority to manage the course of

5   trials." Luce v. United States, 469 U.S. 38, 40 n. 2 (1984).  The Ninth Circuit explained motions in

6   limine "allow parties to resolve evidentiary disputes ahead of trial, without first having to present

7   potentially prejudicial evidence in front of a jury." Brodit v. Cabra, 350 F.3d 985, 1004-05 (9th Cir.

8   2003) (citations omitted).

9         Importantly, motions in limine seeking the exclusion of broad categories of evidence are

10  disfavored.  See Sperberg v. Goodyear Tire and Rubber Co., 519 F.2d 708, 712 (6th Cir. 1975).  The

11  Court "is almost always better situated during the actual trial to assess the value and utility of

12  evidence." Wilkins v. Kmart Corp., 487 F. Supp. 2d 1216, 1218 (D. Kan. 2007).  The Sixth Circuit

13  explained, "[A] better practice is to deal with questions of admissibility of evidence as they arise [in

14  trial]" as opposed to ruling on a motion in limine.  Sperberg, 519 F.2d at 712.  Nevertheless, motions

15  in limine are "an important tool available to the trial judge to ensure the expeditious and evenhanded

16  management of the trial proceedings." Jonasson v. Lutheran Child & Family Services, 115 F.3d 436,

17  440 (7th Cir. 1997).

18        "[A] motion in limine should not be used to resolve factual disputes or weigh evidence," C & E

19  Services, Inc. v. Ashland Inc., 539 F. Supp. 2d 316, 323 (D. D.C. 2008), because that is the province

20  of the jury.  See Reeves v. Sanderson Plumbing Products, 530 U.S. 133, 150 (2000).

21  **III.   Defendant's Motion in Limine No. 1 –Others being assigned less arduous duties**

22        Defendant moves the Court to exclude evidence that other employees, who performed the ESS

23  job, were assigned less arduous duties than those assigned Plaintiff.  Defendant argues that Plaintiff

24  has maintained through the bulk of the litigation that the adverse employment action at issue is the

25  reassignment to the ESS duties.  (Doc. 36 at 6-8)  Defendant argues Plaintiff maintained this position

26  throughout discovery and that it was not until she filed her opposition to the City's motion for

27  summary judgment did she change her position to indicate that the more arduous duties was also an

28  adverse employment action.  Id. at 7.  Thus, Defendant argues Plaintiff should be precluded from

2

presenting evidence that the reassignment included duties that were more arduous than those performed by Dave Strong—the person performing the ESS job before Plaintiff took over some of the duties—and Mike Fowler—the person who took over the ESS job after Plaintiff.  Id. at 7.

In particular, Defendant argues Mike Fowler should not be permitted to testify because she did not properly identify him as a witness to this conduct before the close of discovery. First, Defendant complains that in her written responses to discovery, Plaintiff asserted that the new ESS job duties were more physically demanding than her other duties but she did not state that others who held the ESS position were not responsible for these types of tasks.  Notably, this interrogatory reads, "State all facts in Paragraph 10 of your Complaint that your complaint to Chief DeRosia about the Aguil harassment was a motivating factor for your reassignment to the Emergency Service Specialist position."  (Doc. 36 at 6)

Second, Defendant argues that Plaintiff failed to mention at her deposition that Fowler held the ESS job after her and that he was not obligated to do the more onerous tasks.  Finally, Defendant asserts that until after discovery closed, Plaintiff's Rule 26 disclosure failed to provide sufficient detail to demonstrate that Fowler would testify about this topic. (Doc. 36 at 7-8)  In essence, each of these arguments raise the same point; that Plaintiff did not fully cooperate with discovery.

For her part, Plaintiff argues that she has not deviated from her claim that the reassignment to the ESS duties was the only adverse employment action at issue.  (Doc. 39 at 1-2)  Rather she asserts that the evidence related to whether she was assigned more arduous tasks than her predecessor or her successor is proof of retaliatory intent, not the adverse employment action. Id. at 2.

In addition, she argues that Mike Fowler should be permitted to testify about the job tasks to which he was assigned while in the ESS position, because she provided sufficient information to identify Fowler as a witness.  (Doc. 39 at 3) While not directly addressing her written response to Special Interrogatory No. 3, Plaintiff argues first that the information provided in her initial disclosure identified Fowler, as Defendants admit.  Id.  Second, she iterates that she supplemented her disclosure twice related to Fowler; once when she discovered an address for him and again after her counsel met

with him.[1]  Id.  The second amendment specifically detailed DeRosia's unequal treatment of her when compared against Strong and Fowler. Id.  Counsel attests that he did not know that that Fowler was not required to perform the physical duties until he met with him in June 11, 2014. (Doc. 39-1 at 1-2)

Finally, and most persuasively, Plaintiff argues that at her deposition she testified about how other ESS officers were not required to do the physically demanding work that she was required to do. (Doc. 39 at 3)  Neither side has provided the Court a copy of Plaintiff's deposition transcript but an excerpt submitted by Defendant in support for the motion for summary judgment indicates Plaintiff testified, "The other emergency services officer didn't have to do that[2]" when referring to her obligation to move and inventory the boxes.  (Doc. 24-4 at 63)  This other officer was not identified by name.  Notably, there is no evidence before the Court that Plaintiff was ever asked who this person was.  Instead, Defendant argues that in response to a question by her own counsel—the topic of which is unclear—Plaintiff reported that Dave Strong was not required to work at the EOC (Doc. 36 at 7); there is no indication whether Plaintiff was asked whether Strong, Fowler, or anyone else in the ESS position, was required to perform the physically demanding work as she was.

Federal Rules of Civil Procedure 26(e) requires a party who has responded to an interrogatory to supplement its response in a timely manner if the party learns that its response is incomplete and if the additional information has not otherwise been made known to the other party during the discovery process.  Federal Rules of Civil Procedure 37(c) (1) prohibits a party who fails to provide information or identify a witness as required by Rule 26(e), from using that information or witness to supply evidence on a motion or at trial unless the failure was substantially justified or harmless. To determine whether evidence should be precluded under Rule 37, "courts consider (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for it[s] failure to disclose the evidence." *San Francisco*

---

[1] Notably, at her deposition, Plaintiff testified she believed Fowler worked at the Chamber of Commerce for Delano. (Doc. 27-1 at 8)  Indeed, from the portions of Plaintiff's transcripts to which the Court has access, it is unclear whether Plaintiff knew at the time of her deposition that Fowler worked in the ESS position—or whether she was referring to someone else—of if, even now, she knows this.   (Doc. 24-4 at 73)

[2] Given this testimony, the Court is unclear why Defendant claims to have not been apprized by Plaintiff during discovery that she believed she was being singled out by having to do the physical labor.

*Baykeeper v. West Bay Sanitary Dist.*, 791 F.Supp.2d 719, 733 (N.D. Cal. 2011).

Here, as the Court found when ruling on a similar objection to Fowler's testimony (Doc. 32 at 7), the Court does not find that Defendant was surprised by this evidence.  Fowler was placed in the ESS position after Plaintiff departed and Defendant was best situated to know this and whether he was required to do the physically demanding work as Plaintiff is alleged to have done.  Moreover, Plaintiff's initial Rule 26 disclosure was sufficient to alert Defendant that he had information that bore on the case.  Also, the Court cannot find that allowing the evidence would disrupt the trial and, in fact, Defendant does not so claim.  Moreover, it appears the evidence is significant because it bears on Plaintiff's theory that she was singled out as a result of her complaints about Aguil.  Plaintiff has "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against [him]." Reeves v. Sanderson Plumbing Products, Inc. 530 U.S. 133, 142 (2000).  Evidence that Chief DeRosia assigned duties to Plaintiff that he did not assign to employees performing the ESS position before and after Plaintiff was responsible for some of the duties, is probative of his retaliatory intent and is admissible.  Finally, the Court finds that as soon as Plaintiff's counsel discovered the information, he supplemented Plaintiff's Rule 26 disclosure.  Thus, the motion is **DENIED**.

## IV.     Defendant's Motion in Limine No. 2  - Statements overheard by Fowler

Defendant moves the Court to exclude the testimony of Mike Fowler related to statements he claims he heard Police Chief Derosia make related to Plaintiff.  In particular, Defendant moves the Court to exclude Fowler's testimony consistent with his declaration in which he asserted,

> After I took over the ESS position, I had more contact with Chief DeRosia and Eddie Aguil. I shared an office with Eddie Aguil for two years. Chief DeRosia gave me the impression he was angry with Robin Moniz for some reason. Chief DeRosia and Eddie Aguil both told me that Ms. Moniz had messed up by complaining about Eddie Aguil and they would find any way to keep her fro in returning to work for the City. Eddie Aguil clearly knew that Robin had complained about him to the Chief because after Robin's injury, Eddie mentioned to me several times that he was angry with Robin about her complaints concerning him. He would say things such as "Robin only thought she could complain about me." After Robin's injury, and during the time I shared an office with Eddie Aguil, I heard Chief DeRosia and Eddie and Aguil say negative things about Robin Moniz. They both referred to her as a bitch and they both stated they hoped she would never return to the City of Delano Police Department.

(Doc. 36 at 11-13)

For the same reasons set forth above as to Motion in Limine #1, this motion is **DENIED**.

**V.      Defendant's Motion in Limine No. 3 – Damages for emotional distress, pain & suffering and future lost wages**

Defendant argues that Plaintiff should be precluded from providing evidence she suffered damages for emotional distress, pain & suffering and future lost wages because in her initial disclosures she indicated that based upon the fact she was earning $19 per hour, she had lost "approximately $39,000[3] annually. To date, her lost income is approximately $107,000. This continues to accrue at the rate of $39,000 annually." (Doc. 36 at 15)  Contrasted to this, Plaintiff responded to written discovery in October 2013 in which she claimed that based upon her earning $2,856 per month, she had been earning about $34,272 per year while working for the City and that with "a work life expectancy of at least 17.5 more years $34,272 x 17.5 equals $599,760." (Doc. 36 at 15)

Defendant argues that it cannot discern why the annual figures vary.  In addition, the City argues Plaintiff has not designated an expert to testify whether she will be able to work in the future and has not designated an expert economist to calculate the present value of these damages.[4]  Likewise, Defendant objects because, though the trial will concern only the first and second causes of action—the remaining claims were abandoned by Plaintiff—Plaintiff has not explained how much of the emotional distress damages remain.  Finally, Defendant claims that it does not know the amount of the workers compensation award—which, it claims seeks damages for "the exact same damages"—because, though Plaintiff provided some workers compensation documents in October 2013, she did not produce all of them.[5]  On these grounds, Defendant seeks to preclude Plaintiff from presenting, in essence, all evidence related to damages.

Plaintiff opposes the motion and notes that her response to written discovery was made after

---

[3] According to the Court's calculations, $19 x 40 hours per week x 52 weeks per year equals, $39,520.
[4] Seemingly, it is Defendant's obligation to present this type of expert testimony given the relevant jury instructions which preclude such a discount *unless* supported by expert testimony or the parties stipulate to the discount rate.  Model Civ. Jury Instr. 9th Cir. 5.4 (2007); Judicial Council of California Civil Jury Instruction 3904A. In any event, Defendant has failed to support its position with legal authority that Plaintiff is obligated to present this type of testimony.
[5] On May 8, 2014, the Court held an informal telephonic conference with counsel.  The issue addressed was a subpoena issued by Defendant's attorney to "AIMS" to obtain Plaintiff's workers compensation records despite that discovery had closed.  (Doc. 22)  At the conference, Defendant's counsel agreed to withdraw the subpoena and Plaintiff's counsel agreed that Defendant was free to obtain her workers compensation records from the City's own workers compensation lawyer who was working on Plaintiff's claim.  Id. Thus, the Court is unclear why the City now takes the position it has been precluded from having full disclosure of Plaintiff's records related to her claimed industrial injury.

having received her pay records such to explain the discrepancy between the numbers provided in the initial disclosure and those provided later.  (Doc. 41 at 2) Likewise, she claims that she has designated medical experts but that no expert is needed for claims of emotional distress damages or lost income. Plaintiff argues also that she has made clear that the emotional distress damages she claims are "incalculable" and that she is not obligated to identify other stressors before she can seek these damages.  Also, Plaintiff argues she specified that she sought pain and suffering damages related only to the retaliation and cites to her initial disclosures in which she disclosed as a category of damages that, "Plaintiff has permanent damage in her neck/shoulder area from the injuries she sustained due to the retaliation. This damage includes pain and suffering." (Doc. 39-2 at 5)  Finally, Plaintiff asserts that the workers compensation documents were equally available to the City through its own workers compensation attorney but that Plaintiff produced all documents from her own workers compensation attorney.  (Doc. 41 at 4)

The Court finds that Plaintiff has adequately set forth her basis for her damage claims and that she is appropriately seeking only the damages related to the causes of action at issue.  Finally, Defendant's bare claim that it does not have all of the workers compensation documents, without any showing as to what is missing, is insufficient.  Likewise, the Court is at a loss as to why the City does not simply request the workers compensation records from its own attorney such to alleviate its lack of knowledge as to the workers compensation payments and award, if any, Plaintiff has obtained. Therefore, the motion is **DENIED**.

**VI.    Defendant's Motion in Limine No. 4 – Non-retained expert and lay opinion testimony re: Plaintiff's injuries**

Defendant seeks to preclude the testimony of all witnesses who treated Plaintiff for her claimed injuries or evaluated her related to her workers compensation case.  (Doc. 36 at 17-20)  Defendant argues that many of the witnesses are cumulative and argues only two witnesses should be allowed; one who can testify about the treatment she received and one who evaluated her for workers compensation purposes.  Id. at 18.  Defendant argues also that any expert should be excluded because Plaintiff did not properly designate any experts.  Id. at 18-19.  Finally, Defendant argues that neither Plaintiff nor any other non-expert should be allowed to testify to matters that are within the province

7

of an expert.  Id. at 19-20.

Plaintiff argues that, in fact, she made a sufficient expert disclosure as least as to Doctors Fedder, Faguet, Curtis, Grossman and Palencia and that the opinions of Drs. Palencia, Grossman and Melamed were adequately set forth in Dr. Fedder's report.  (Doc. 42)  Likewise, she argues that even if the disclosure was not adequate, there is no showing of prejudice and there was substantial justification for the inadequacy.  Id.

The disclosure of expert witnesses is governed by Rule 26(a) of the Federal Rules of Procedure. Parties must disclose he "identity of any witness" who may be used at trial to present evidence pursuant to Rules 702, 703, or 705, and witnesses who are "retained or specially employed to provide expert testimony" must provide an expert report.  Fed. R. Civ. P. 26(a)(2).  In general, a treating physician is neither retained nor specially employed to provide expert testimony, as he or she is a percipient witness of the treatment rendered.  Defendant argues that because some of these experts were hired by Plaintiff's workers compensation attorney, they should be considered retained experts in this action. However, Defendant has failed to support this argument with authority and has failed, even, to detail which of the experts it contends should be categorized as "retained."  Likewise, Defendant has failed to demonstrate how an agreed medical examination—such as that provided by Dr. Fedder—equates to a determination that Plaintiff's workers compensation attorney "retained" the expert.[6]  Thus, the Court rejects this argument and finds that none of the experts are retained for this action.

Federal Rules of Civil Procedure 26(a)(2)(C) states, "if the witness is not required to provide a written report, this disclosure must state: (i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected testify." These disclosure requirements were added "to mandate summary disclosures of the opinions to be offered by expert witnesses who are not required to provide reports under Rule 26(a)(2)(B) and of the facts supporting those opinions." See Adv. Comm. Notes to 2010 Amendments. The disclosures were designed to be "considerably less extensive" than those required under Rule 26(a)(2)(B) and courts "must take care against requiring undue detail." Id.

---

[6] Indeed, in the Court's experience, AMEs are generally paid for by the employer, not the employee.

Treating physicians and evaluating, non-treating physicians include those who must be identified under Rule 26(a)(2)(A) and provide disclosures pursuant to Rule 26(a)(2)(C) as they may testify as both fact and expert witnesses.

In her initial disclosures made pursuant to "FRCP 26(a)(1) *and* (2)" (Doc. 39-2 at 1), Plaintiff identified Anna Mendoza, Dr. Palencia,  Dr. Brian Grossman,  Dr. Hooman Melamed,  Dr. Jeffery Hirsch, Dr. Greg Hirakawa, PHD, Dr. Thomas Curtis, Dr. David Manno, Dr. Matthew Fogruty and Dr. Thinh Mai as the professionals who provided treatment to Plaintiff for the injuries she claims she suffered.  (Doc. 39-2 at 5-7)  She also identified Dr. Froz Sheikh, Dr. Robert Faguet, Dr. Richard Fedder and Kathleen Murphy, PHD as those who evaluated her for purposes of the workers compensation action.  Id. Finally, she disclosed Dr. Kirit Desai but failed to identify what information this person had about the case. Id.  Thus, except for Dr. Desai, Plaintiff adequately indicated the subject matter upon which each would testify.  However, the disclosure did not provide "a summary of the facts and opinions to which the witness is expected testify."

According to Federal Rule of Civil Procedure 37(c)(1), if a party fails to properly disclose an expert, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed.R.Civ.P. 37(c)(1). Rule 37(c)(1) is limited to a party's failure "to provide information or identify a witness as required by Rule 26(a) or 26(e)." See id. The burden to prove harmlessness is on the party seeking to avoid Rule 37's sanction. Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1107 (9th Cir.2001).

On the other hand, though Plaintiff did not provide the summary of facts with the disclosure, during discovery she provided the expert reports of several of the experts listed.  (Docs. 42-3, 42-4, 42-5, 42-6, 42-7, 42-8, 42-9, 42-10, 42-11, 42-12)  Therefore, as to Doctors Fedder, Faguet and Grossman, the motion is **DENIED**.

Plaintiff argues that she provided the report of Dr. Curtis during discovery so his testimony should be permitted too.  (Doc. 42 at 3)  However, the report referenced, though on letterhead which lists Dr. Curtis prominently, was authored by Dr. Irene Fruchtbaum (Doc. 42-9 at 16), who was not designated.  Moreover, Dr. Fruchtbaum attests that Dr. Curtis' "provided the initial psychological test interpretations" and assisted with editing the report, it is not clear whether the report sets forth any of

1  Dr. Curtis' opinion and Plaintiff does not direct the Court to any of his opinions set forth in the report.

2  Thus, as to Dr. Curtis, the motion is **GRANTED**.

3  As to Dr. Palencia, Plaintiff indicates that in discovery, she provided Dr. Palencia's "Doctor's

4  Certificate." (Doc. 42-12)  This certificate sets forth Dr. Palencia's diagnosis, it does not provide any

5  facts upon which the doctor's opinion is based.  Id.  However, Plaintiff notes that Dr. Fedder's report

6  sets forth the opinions and factual basis for the opinions of Dr. Palencia, Dr. Grossman and Dr.

7  Melamed.  In this report, Dr. Palencia's extensive treatment notes are detailed but Dr. Melamed's are

8  not.  In fact, from the Court's review of the report, it is not clear what opinions Dr. Melamed would

9  express—other than he recommended cervical spinal surgery at one time—or the facts upon which he

10  relied to come to this opinion.[7]  Thus, as to Dr. Palencia, it is **DENIED** but as to Dr. Melamed and the

11  remaining doctors listed on the disclosure (Anna Mendoza, Dr. Hooman Melamed, Dr. Richard Fedder,

12  Dr. David Manno, Dr. Thinh Mai, Dr. Froz Sheikh, Kathleen Murphy, PHD and Dr. Kirit Desai), the

13  motion is **GRANTED**.

14  Finally, the Court agrees that it will not allow cumulative testimony.  Thus, Plaintiff will be

15  required to limit the presentation of experts only to that testimony that does not duplicate the testimony

16  given by others experts.

17  **VII.    Defendant's' Motion in Limine No. 5 – Evidence of other lawsuits or complaints against**

18  **Defendant**

19  In this motion, Defendant seeks to preclude the testimony of Elizabeth Sutton, in full and the

20  testimony of Pamela Romero and Michael Fowler about retaliation they suffered.

21  At the pretrial conference, Plaintiff's counsel indicated that he didn't believe Fowler would

22  testify about any retaliation he suffered but could not speak to whether Romero would offer "me too"

23  evidence.  Thus, unless there is a showing—made outside the presence of the jury—demonstrating the

24  admissibility of their testimony related to "me too" evidence, this evidence will not be admitted.

25  On the other hand, at the pretrial conference, Plaintiff's counsel agreed that Sutton would not

26  testify about the treatment she received but would testify about retaliatory statements she heard Chief

27

28  [7] The Court notes Plaintiff has not specifically directed it to any portion of the report she contends adequately sets forth Dr. Melamed's opinions or the factual basis for them and the Court's review has not located this information either.

10

1    DeRosia make related to another employee, Tijerina.

2            In general, evidence of other acts or wrongs may be admitted to demonstrate motive.  Fed. R.

3    Evid. 404(b).  Indeed, courts admit this type of evidence frequently, upon the proper showing.  For

4    example, in Goldsmith v. Bagby Elevator Co., Inc., 513 F.3d 1261, 1286 (11th Cir. 2008)— a case

5    involving claims of retaliation and discrimination—the court held: "The 'me too' evidence was

6    admissible, under Rule 404(b), to prove the intent of Bagby Elevator to discriminate and retaliate."

7    The court permitted the evidence under 404(b) to demonstrate the unlawful intent of a common

8    decision maker, even though the common decision maker was only one of several, and the

9    circumstances were very different from those of the plaintiff.   Id. at 1286.  The court held similarly in

10   Demers v. Adams Homes of Northwest Florida, Inc., 321 F. App'x 847, 853-854 (11th Cir. 2009),

11   when other women were permitted to testify as to the unlawful intent.

12           In Buckley v. Mukasey, 538 F.3d 306, 319 (4th Cir. 2008), the court determined that evidence

13   of retaliatory motive is relevant under Fed. R. Evid. 401 and is admissible under 404(b).  Similarly, in

14   Heyne v. Carruso, 69 F.3d 1475, 1481 (9th Cir. 1995), the Court reversed the trial court's decision to

15   preclude "me too" evidence, finding evidence from other employees who suffered harassment by the

16   defendant was probative of the defendant's motive for firing her.  Id.

17           Here, Sutton asserts that Chief DeRosia told her that a coworker, Joanne Tijerina, complained

18   about Eddie Aguil failing to wear his uniform.  (Doc. 25-3 at 8)  In response, the Chief required

19   Tijerina to work outside in full dress uniform during the hot weather.  Id.  As a result, Tijerina quit.  Id.

20   Afterward, the Chief expressed that he thought this was funny and stated that he didn't like "anyone

21   who fucks with him" and he "gets rid of them."  Id.

22           Plaintiff argues that this is similar to her situation in which, after complaining about Aguil, she

23   was forced to work in the hot "Quonset hut" doing manual labor.  (Doc. 37 at 2)  Defendant argues,

24   however, this evidence is unfairly prejudicial and has no probative effect.  (Doc. 36 at 21-22) The Court

25   disagrees.  The probative value is obvious.  It demonstrates that the reason he required Plaintiff to do

26   the work in the hot area during the hot summer months was to retaliate for her complaint against Aguil,

27   as determined in Heyne.  Moreover, though the evidence is prejudicial, it does not find that its

28   probative value is outweighed thereby.  Thus, the motion is **DENIED** to the extent that Sutton may

testify about the situation involving M. Tijerina as described in Sutton's declaration.

**VIII.   Defendants' Motion in Limine No. 6 – Evidence of damages related to Plaintiff's industrial injury**

Plaintiff argues that any evidence related to damages which are covered by the workers compensation system should not be admitted because they are preempted by that scheme.  (Doc. 36 at 24-25)  However, as pointed out by Plaintiff, in a Title VII case, workers compensation systems do not preempt work place injury claims.  In <u>Roberts v. Roadway Express, Inc.</u>, 149 F.3d 1098, 1105 (10th Cir. 1998), the court rejected that the state's workers compensation scheme could preempt the emotional distress damages allowed by Title VII.  <u>Roberts</u> cited <u>Karcher v. Emerson Elec. Co.</u>, 94 F.3d 502, 509 (8th Cir. 1996) and <u>Lopez v. S.B. Thomas, Inc.</u>, 831 F.2d 1184, 1190 (2d Cir. 1987) and noted that in both of these cases the courts found that the workers compensation systems did not provide the exclusive remedy for emotional distress damages when brought in a Title VII claim.

Moreover, damages caused by the unlawful retaliation are compensable outside of the workers compensation scheme because such damages are not a consequence of the normal employment bargain. In the court's order denying summary judgment on this same issue, the Court rejected that <u>Huffman v. Interstate Brans Companies</u>, 121 Cal.App.4th 679 (2004), required a finding that Plaintiff's claims for her physical and emotional injuries were barred.  In particular, the Court determined that here, there is evidence that Plaintiff's injuries were not suffered while performing the normal duties of the ESS job but were suffered when she was required to do work that were not normally be required by those performing in this capacity.  (Doc. 32 at 20)  If Plaintiff convinces the jury that she was singled out for this onerous work, she can seek damages for the physical injuries and the emotion damage caused by those injuries, though any damages would be subject to a set-off.  Despite the Court's previous ruling, Defendant repeats its previous arguments.  However, Defendant has failed to demonstrate that the Court should reconsider its previous order.  Thus, the motion is **DENIED.**

**ORDER**

Based upon the foregoing, the Court **ORDERS**:

1.        Defendant's motion in limine #1, is **DENIED**;

2.        Defendant's motion in limine #2, is **DENIED**;

12

3.     Defendant's motion in limine #3, is **DENIED**;

4.     Defendant's motion in limine #4, is **GRANTED IN PART** and **DENIED IN PART** as follows:

      a.     As to Doctors Fedder, Faguet, Grossman and Placencia, the motion is **DENIED**;

      b.     As to Anna Mendoza, Dr. Hooman Melamed, Dr. Thomas Curtis, Dr. David Manno, Dr. Thinh Mai, Dr. Froz Sheikh, Kathleen Murphy, PHD and Dr. Kirit Desai, the motion is **GRANTED**;

5.     Defendant's motion in limine #5, is **DENIED** to the extent that Sutton may testify about the situation involving M. Tijerina as described in Sutton's declaration. As to testimony by Michael Fowler and Pamela Romero about retaliation they personally suffered, this evidence will not be admitted unless there is a showing—made outside the presence of the jury—demonstrating the admissibility of their testimony related to "me too" evidence;

6.     Defendant's motion in limine #6, is **DENIED**;

7.     The hearing on the motions in limine is **VACATED**.


IT IS SO ORDERED.

Dated:   **January 8, 2015**                    **/s/ Jennifer L. Thurston**
                                                UNITED STATES MAGISTRATE JUDGE